**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED TACONITE LLC,<br><br>Defendant. | Case No. 19-CV-1043 (NEB/LIB)<br><br><br><br>ORDER ENTERING CONSENT DECREE |

---

This matter is before the Court on the August 27, 2019 Motion for Entry of Consent Decree filed by the United States of America, acting by the authority of its Attorney General on behalf of the Environmental Protection Agency ("EPA"). [ECF No. 6.] The proposed consent decree [ECF No. 3-1 ("Consent Decree")] represents an agreement between the parties to resolve a dispute over alleged violations of EPA regulations under Sections 110 and 112 of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7410 and 7412, at a taconite plant owned and operated by United Taconite LLC ("United Taconite"). Having determined that the Consent Decree is procedurally and substantively fair, reasonable, and consistent with governing law, the Court grants the motion.

## BACKGROUND

According to the complaint, [ECF No. 1 ("Compl.")], United Taconite owns and operates a taconite mine in Eveleth, Minnesota, and an associated taconite processing

plant approximately seven miles south in Forbes, Minnesota. (Compl. ¶ 8.) The processing plant contains large wet scrubbers as well as various small wet scrubbers and fabric filter baghouses designed to control particulate emissions. (Compl. ¶ 8.) On June 22, 2010, the Minnesota Pollution Control Agency issued a renewed air permit, which it designated as Permit No. 13700113-005, to United Taconite's processing plant. (Compl. ¶ 20.) Relevant here, the permit requires a performance test for each group of pollution control equipment, that each piece of pollution control equipment comply with parametric limits established by the relevant performance test, and that all pollution control equipment operates continuously whenever corresponding process equipment and emission units are operated. (Compl. ¶¶ 20–21.)

On February 21, 2014, the EPA issued a Notice of Violation and Findings of Violation to United Taconite. (Compl. ¶ 4). It then sued United Taconite on April 17, 2019, seeking civil penalties and injunctive relief for alleged violations of the Act. In particular, its Complaint alleges that (1) on at least thirteen occasions between January 2012 and January 2015, United Taconite caused or allowed emissions of particulate matter to exceed emissions limits (Compl. ¶ 33), (2) on approximately 300 days between January 1, 2010, and December 31, 2016, United Taconite operated pollution control equipment outside its required daily pressure drop limits (Compl. ¶ 37), (3) on approximately 400 days between January 1, 2010, and December 31, 2016, United Taconite operated pollution control equipment outside its required daily average water flow limits

(Compl. ¶ 38), and (4) during approximately 1500 hours between January 1, 2010, and December 31, 2016, United Taconite operated process equipment while pollution control equipment was not being operated. (Compl. ¶ 43.)

The Complaint pleads that some or all of this alleged conduct violated provisions of (1) the National Emission Standards for Hazardous Pollutants for the Taconite and Iron Ore Processing Industry, 40 C.F.R. Part 63, Subpart RRRRR; (2) the State Implementation Plan adopted by the State of Minnesota and approved by the EPA under Section 110 of the Act; and (3) Permit No. 13700113-005 issued under Title V, 42 U.S.C. §§ 7661–7661f. (Compl. ¶¶ 32–45.)

On the same day that it filed its Complaint, the EPA gave notice that it would seek the Court's approval of the Consent Decree after it had received and considered any public comments. [ECF No. 3.] Under the Consent Decree, United Taconite does not admit any liability but agrees to (1) pay civil penalties for the alleged violations; (2) replace an existing wet scrubber with an allegedly more efficient dry fabric filter particulate matter control system; (3) automate the process by which the indurating furnaces are fueled exclusively by natural gas within five minutes of a so-called stack cap event as well as other specified corrective actions; (4) undertake certain additional reporting obligations; and (5) be bound by stipulated penalties for noncompliance.

The EPA published notice of the Consent Decree in the Federal Register on April 24, 2019, for public comment for a period of 30 days. It received one set of comments on

the Consent Decree jointly from the Environmental Integrity Project and the Environmental Law and Policy Center. [*See* ECF No. 8.]

The EPA now moves for an order entering the Consent Decree. Its motion is unopposed.

## ANALYSIS

When deciding whether to approve a consent decree, a district court must determine whether the proposed consent decree is procedurally fair, substantively fair, reasonable, and consistent with the governing law. *See United States v. Metro. St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992); *see also United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018 (8th Cir. 2002). In so doing, the district court may neither "mechanistically rubberstamp the agency's suggestions" nor "approach the merits of the contemplated settlement *de novo*." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990); *see also BP Amoco*, 277 F.3d at 1019 (acknowledging that "the EPA's inherent experience and expertise" counsels against de novo review).

### I. Procedural Fairness

When evaluating procedural fairness, courts "look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g*, 899 F.2d at 86. Here, "[n]othing in the record suggests that the government and [United Taconite]

were not negotiating in good faith and at arm's length," and therefore the Court determines that the Consent Decree is procedurally fair. *BP Amoco*, 277 F.3d at 1020.

## II. Substantive Fairness

"Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *BP Amoco*, 277 F.3d at 1020 (quoting *Cannons Eng'g*, 899 F.2d at 87). The Court notes that United Taconite does not concede liability. The EPA represents that the Consent Decree "reflects the parties' careful and informed assessment of the relative merits of each other's claims, while taking into consideration the costs and risks associated with litigation." [ECF No. 6 at 11.] Responding to the commenters, the EPA notes that while it believes its claims are meritorious, "United Taconite would undoubtedly raise a number of legal and factual defenses were this case litigated, including that approximately half of the exceedances were subject to the state regulatory emergency defense for sudden and reasonably unforeseeable events beyond [its] control." (*Id.* at 16.) Mindful of the deference the EPA is owed, the Court is satisfied that the Consent Decree "appears to be a careful assessment of litigation risks based on extensive experience with this type of litigation." *United States v. Wisc. Elec. Power Co.*, 522 F. Supp. 2d 1107, 1118 (E.D. Wisc. 2007). Thus, the Court determines that the Consent Decree is substantively fair.

## III. Reasonableness

When evaluating the reasonableness of a proposed consent decree, courts have considered "the nature/extent of hazards; the degree to which the remedy will adequately address the hazards; possible alternatives for remedying hazards; and the extent to which the decree furthers the goals of the statute." *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991). Of these, the "degree to which the remedy will adequately address" the environmental hazard is considered the most important. *Id.* at 1436–37; *see also Cannons Eng'g*, 899 F.2d at 89. Courts also consider "whether the settlement satisfactorily compensates the public for the actual (and anticipated) costs of remedial and response measures" and the "foreseeable risks of loss" in litigation. *Cannons Eng'g*, 899 F.2d at 90.

Among other things, the EPA claims that automating the process by which the indurating furnaces are fueled exclusively by natural gas within five minutes of a so-called stack cap event and replacing an existing wet scrubber with a dry fabric filter particulate matter control system are likely to reduce emissions below the applicable limits. [ECF No. 6 at 13, 17–19.] Affording the EPA all due deference, the Court finds that these measures are reasonably calculated to reduce the likelihood of future violations. And, as the Consent Decree represents a fair assessment of the litigation risks and foreseeable related transaction costs, the Court determines that the Consent Decree is reasonable.

## IV. Consistency with Governing Law

Finally, the Court must consider whether the Consent Decree complies with the law. *See, e.g.*, *Akzo Coatings*, 949 F.2d at 1439. Among the primary purposes of the Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b). Requiring United Taconite to automate controls to burn natural gas during stack cap events, to install a dry fabric filter control system, and to submit to additional reporting requirements appears consistent with the Act. And it is the Court's understanding that "[t]he Consent Decree clearly states that it 'shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under [the applicable laws and regulations]' except for the specific violations alleged in the Complaint through the date of lodging." [ECF No. 6 at 18 (quoting Consent Decree ¶ 67).] With that understanding, the Court determines that the Consent Decree is consistent with the primary purpose of the Act.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The United States' Motion for Entry of Consent Decree [ECF No. 6] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 4, 2019

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge